UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 08-61503-CIV-COHN/SELTZER

ROBERT SHAVE,

    Plaintiff,

v.

STANFORD COINS & BULLION, INC.,

    Defendant.

_____/

**DEFENDANT STANFORD COINS AND BULLION, INC.'S
MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

Defendant Stanford Coins & Bullion ("SC&B"), by and through its undersigned counsel, respectfully submits its Memorandum of Law in support of its Motion to Dismiss Plaintiff's Complaint with prejudice, and states as follows.

**INTRODUCTION AND PROCEDURAL BACKGROUND**

Plaintiff's claims against SC&B are a baseless attempt to recover losses he claims he incurred engaging in arms-length transactions with SC&B involving the purchase and sale of numismatic – ie. rare, collectible – coins.

Plaintiff initially commenced an action in this court on May 29, 2007 asserting identical claims against Stanford Financial Group, Inc., a non-existent entity. *See Shave v. Stanford Financial Group, Inc.*, S.D. Fla. Case No. 07-60749-CIV-COOK/BROWN ("the initial federal court action). Stanford Financial Group, Inc. filed a motion to dismiss the initial federal court action, and on August 22, 2007, the court entered an order denying the motion, but directing Plaintiff to file an

amended complaint addressing the pleading deficiencies in its claims, including Plaintiff's claim arising under Fla. Stat. § 415.1111 (2007). A copy of U.S. District Judge Cooke's August 22, 2007 Order is attached as Exhibit A.

Rather than filing an amended complaint by the deadline imposed by the court, Plaintiff instead filed a Notice of Voluntary Dismissal on September 28, 2007. Plaintiff then commenced the underlying state court on November 5, 2007 against SC&B and Stanford Financial Group Company, a Florida corporation affiliated with SC&B that was not a party to the rare coin transactions at issue. After Stanford Financial Group Company moved to dismiss the claims against it, Plaintiff voluntarily dismissed the company from the state court action on August 25, 2008. This action was then timely removed by SC&B to this Court on September 22, 2008.

The pending Complaint attempts to assert claims against SC&B for violation of Florida's Securities and Investor Protection Act, common law negligence, breach of fiduciary duty, and violation of the Adult Protective Services Act, Florida Statutes § 415.101, *et seq*. The Complaint, however, fails to state any viable cause of action against SC&B.

First, despite this court's prior admonition in the initial federal court action that Plaintiffs were required to plead their claims in accordance with the Adult Protective Services Act, Plaintiff's Complaint once again fails to allege any facts demonstrating that he is a "vulnerable adult" or that he has a viable cause of action under the Act. Plaintiff's purported claims for violation of Fla. Stat. § 517.301 must similarly be dismissed for failure to allege any conduct by SC&B that falls with the scope of the protections afforded by the statute. Plaintiff's claims for negligence and breach of fiduciary duty should similarly be dismissed because the Complaint fails to allege facts demonstrating that SC&B owed, much less breached, any standard of care or fiduciary duty to Plaintiff in connection with the transactions at issue. Plaintiff's negligence and breach of fiduciary

duty claims are also subject to dismissal because each of the separate transactions involving the purchase and sale of the coins at issue were conducted pursuant to written and/or verbal contracts between the Plaintiff and SC&B, and Plaintiff is therefore barred from seeking to recover his alleged economic damages in tort by the economic loss rule.

The Complaint against SC&B should accordingly be dismissed, with prejudice.

## ARGUMENT

### I. The Complaint Does Not Allege Any Facts Establishing A Claim Under Florida's Adult Protective Services Act.

As an initial matter, Plaintiff's claim for "Elderly Financial Abuse," *i.e.*, violation of the Adult Protective Services Act, Fla. Stat. Chapter 415.101, *et seq.* (the "Act"), must be dismissed because Plaintiff has (1) failed to comply with the administrative requirements necessary for maintaining a private right of action under the Act, (2) failed to allege any facts demonstrating that he is in fact a "vulnerable adult" within the meaning of the Act, and (3) failed to allege any actual "exploitation" within the meaning of the Act.

Plaintiff's attempt to assert a private cause of action under the Act fails as a matter of law because there is no allegation that Plaintiff satisfied or exhausted the administrative remedies available under the Act. The Act does not permit the Plaintiff to avoid the careful and explicit administrative enforcement of the Act – which vests the Florida Department of Children and Families with the duty to investigate claims of exploitation and determine whether the purported victim is vulnerable under the Act – and instead self-diagnose himself as a "vulnerable adult" for the sole purpose of asserting a private action under the Act. *See Reiser v. American Invs. Life Ins. Co.,* Case No. 2004-CA-000284 (Fla. Cir. Ct., Sumter Cty., Apr. 11, 2006) (granting motion for partial summary judgment because there was no indication "that a victim can declare, on their own, that they are a 'vulnerable adult' or that they have been 'exploited' within the meaning of the Act" for

purposes of maintaining a private right of action pursuant to § 415.1111 without satisfying the administrative requirements of the Act"). A copy of the *Reiser* decision is attached as Exhibit B for the Court's convenience.

The Complaint also fails to allege any facts demonstrating that Plaintiff in fact qualifies as a "vulnerable adult" for the purposes of the Act. Instead, Plaintiff seeks to rewrite the Act and create his own definition of a "vulnerable adult" by alleging that he falls within the Act's protections because of "his advanced age, widowhood, pronounced need for sound and truthful investment advice, limited income stream and education, as well as his lack of knowledge and understanding of investment strategies and theories." *See* Complaint, ¶ 111.

Section 415.102(27), Florida Statutes, however, unambiguously defines a vulnerable adult as any person 18 years or older "whose ability to perform the normal activities of daily living or to provide for his or her own care or protection is impaired due to a mental, emotional, long-term physical, or developmental disability or dysfunctioning, or brain damage, or the infirmities of aging." In order to state a viable claim for relief under the Act, Plaintiff was therefore required to allege facts demonstrating that he has an actual, existing condition or ailment, as a consequence of the infirmities of aging or otherwise, that impairs his ability to perform the normal activities of daily living or to provide for his own care or protection.

Indeed, the First District Court of Appeal recently upheld the denial of a claim under the Act for failure to allege these requisite facts. *See Bohannon v. Shands Teaching Hospt. snd Clinics, Inc.*, 983 So. 2d 717 (Fla. 1st DCA 2008). The court in *Bohannon* affirmed that a complaint attempting to state a cause of action under § 415.1111 must in relevant part "set forth factual allegations which demonstrate that the plaintiff "was a 'vulnerable adult' as defined by section 415.102(27) . . . ." The court rejected the plaintiffs' claim based on its finding that the complaint's allegations were "mere

conclusions tracking the language of the statutory definitions, unsupported by facts, and are legally insufficient."

A cursory review of the Complaint reveals that the Plaintiff here has not even parroted the Act's definition of a "vulnerable adult," much less alleged any facts demonstrating that his ability to perform the normal activities of daily living or care and protection for himself was impaired in any way at the time of the transactions. Like *Bohannon*, this exact pleading deficiency was squarely addressed in *Migliaccio, et al. v. Midland National Life Insurance Co., et. al.*, 2007 U.S. Dist. LEXIS 8159 (C.D. Cal. Jan. 26, 2007). The court in *Migliaccio* dismissed the plaintiff's claims under Section 415.1111, Florida Statutes, because the plaintiff failed – just like the Plaintiff in this case – to allege any facts in her complaint demonstrating that she met the statutory definition of a "vulnerable adult," *i.e.,* facts showing that her ability to perform normal living activities or care for or protect herself was actually impaired. *Id.* at 23. A copy of the *Migliaccio* decision is attached as Exhibit C for the Court's convenience.

Plaintiff compounds these fatal pleading defects by failing to allege any facts demonstrating any "exploitation" within the meaning of the Act. As the court explained in *State v. Dyer*, 607 So. 2d 482 (Fla. 2d DCA 1992), the Act's bar against obtaining or using a vulnerable adult's funds, assets, or property for the benefit of someone other than the vulnerable adult requires allegations that the defendant's conduct rises to the level of criminal conversion, embezzlement, or civil theft. In stark contrast, there are no facts in the Complaint demonstrating that SC&B "obtained or used" Plaintiff's funds with the intent to deprive him of the funds, or that such conduct rose to the level of criminal conversion, embezzlement, or civil theft. Plaintiff's false claims that SC&B made unsuitable recommendations and representations and omissions in connection with the coin transactions at issue do not in any event rise to the level of "exploitation" within the meaning of the

Act. *See Dyer*, 607 So. 2d at 482 (holding that alleged conduct relating to high-pressure sales tactics may be exploitation in the general sense, but does not involve the type of misuse of funds contemplated by the Act).

Plaintiff's attempt to pursue a specious claim against SC&B under the Act is particularly inexcusable in light of the fact that the court previously identified these exact same pleading deficiencies in Plaintiff's complaint in the initial federal court action. In her August 27, 2007 Order, U.S. District Judge Cooke reminded Plaintiff that the term "vulnerable adult" is statutorily defined and admonished him that any allegations in any amended complaint concerning his alleged status as a vulnerable adult should be pled in accordance with the Act. *See* Exhibit A, pg. 4. Despite these express instructions, Plaintiff has once again failed to plead any facts satisfying the statutory definition of a vulnerable adult.

As a consequence of Plaintiff's willful failure to heed District Judge Cooke's express admonition when he refiled his Complaint in the state court action, Plaintiff is not entitled to leave to amend or replead his claim for violation of Fla. Stat. § 415.1111, and the claim should be dismissed with prejudice.

**II.    The Complaint Fails to State A Claim For Violation of Florida Securities and Investor Protections Act.**

Plaintiff's claim for "Violations of the Florida Securities and Investor Protections Act - Lack of Registration" in Count I of the Complaint is also subject to dismissal because the rare coins that Plaintiff alleges he purchased and sold through SC&B are not "securities" within the definition of Fla. Stat. § 517.011, *et seq.* ("the Florida Securities Act"), because SC&B had no registration obligations arising under the Act, and because the Complaint fails to sufficiently allege that the coins were investments covered by the Act.

Numerous courts that have addressed the issue have held that the mere purchase and sale of rare coins does not satisfy the definition of a security or investment contract as outlined in the United States Supreme Court's seminal decision of *Securities & Exchange Commission v. Howey*, 328 U.S. 293, 301 (1964), which held that a security or investment contract requires an investment of money in a common enterprise with profits to come solely from the efforts of others. *See, e.g., Securities & Exchange Commission v. Belmont Reid & Company, Inc.*, 794 F.2d 1388, 1391 (9th Cir. 1986) (finding that the sale of coins did not constitute a security because the anticipated profits depended upon market fluctuations, not the defendants' managerial efforts); *Svets v. Osborne Precious Metals Co, Inc.*, 1992 U.S. Dist. LEXIS 15266 (N.D. Cal. 1992) (same holding); *Morgan v. Financial Planning Advisors, Inc.*, 701 F. Supp. 923, 926 (D. Mass. 1988) (holding that plaintiff's rare coin purchases did not qualify as investment contracts and thus did not fall within the purview of the securities laws because there was no indication that the defendants shared with the plaintiffs in both the loss and profits of the transactions); *Copeland v. Hill*, 680 F. Supp. 466, 468 (D. Mass. 1988) (same holding); *Zion v. Standard Financial Management Corp.*, 1988 U.S. Dist. LEXIS 19474 (D. Mass. 1988) (finding that the purchase and sale of rare coins did not involve a "common enterprise" as required by *Howey*); *Llewellyn v. North American Trading*, 1997 U.S. Dist. LEXIS 22142 (S.D.N.Y. 1997) (finding that the coins plaintiff purchased were not securities); *Jost v. Locke*, 673 P.2d 545 (Or. Ct. App. 1983) (purchase and sale of rare coins did not involve securities).

The Complaint therefore fails to state a cause of action under Fla. Sta. § 517.301 for any alleged fraudulent representations or omissions in connection with the offer, purchase or sale of securities. For this same reason, the Complaint fails to state any cause of action against SC&B for failure to disclose that SC&B was not registered with the State of Florida to offer or sell securities under the Florida Securities Act. *See* Complaint, ¶ 77.D. The registration requirements of the

Florida Securities Act, and in particular §§ 517.07 and 517.12, only apply to the offer or sale of securities, and accordingly the rare coin transactions at issue in this case did not implicate any of the registration requirements imposed by the Florida Securities Act.

In addition, the Complaint fails to sufficiently allege that SC&B rendered any investment advice or made any purported misrepresentations or omissions in connection with the offer, sale or purchase of any investment contemplated under the Act. Despite Plaintiff's self-serving claim that he bought the collectible rare coins at issue as investments, the Complaint does not allege any actual facts demonstrating that the coins constitute an "investment" as that term is defined under the Florida Securities Act.

### III. The Complaint Fails To Adequately Allege Any Duty on the Part of SC&B To Support Plaintiff's Negligence and Breach of Fiduciary Duty Claims.

Plaintiff's claims for common law negligence and breach of fiduciary duty must likewise be dismissed because the Complaint fails to allege any sufficient facts – as opposed to mere legal conclusions – establishing the existence of any actual duty arising on the part of SC&B in favor of Plaintiff that was purportedly breached.

In order to state a claim for negligence and breach of fiduciary duty, Plaintiff was required to allege the existence of a duty on the part of SC&B, a breach of that duty, and damages proximately caused by the breach. *See, e.g., Lisanti v. City of Port Richey*, 787 So. 2d 36, 37 (Fla. 2d DCA 2001); *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002). The Complaint here, however, fails to satisfy even the first prong of these requisite elements.

Plaintiff's bare allegation that a fiduciary relationship existed because SC&B had superior knowledge of rare coins and because Plaintiff placed his trust and confidence in SC&B are insufficient as a matter of Florida law. Rather, "a fiduciary relationship is based on trust and confidence between the parties where confidence is reposed by one party and a trust is accepted by

the other." *Taylor Woodrow Homes Florida, Inc. v. 4/46-A Corporation,* 850 So.2d 536, 540 (Fla. 5th DCA 2003) (emphasis added). To establish such a fiduciary duty, a plaintiff must allege both a dependency by one party, and an undertaking by the other party to advise, counsel, and protect the weaker party." *Watkins v. NCNB National Bank of Florida, N.A.*, 622 So.2d 1063, 1065 (Fla. 3d DCA 1993) (emphasis added). Plaintiff was thus required to allege facts demonstrating "some recognition, acceptance or undertaking of the duties of a fiduciary on the part" of SC&B. *Lanz v. Resolution Trust Corporation*, 764 F. Supp. 176, 179 (S.D. Fla. 1991).

While the Complaint contends that the Plaintiff placed trust and confidence with SC&B in selecting the rare coins at issue, it fails to allege any facts demonstrating that SC&B "recognized, accepted, and undertook" the duties of "advising, counseling and protecting" him in connection with the transactions. *See, e.g., Bruhl v. Price Waterhouse Coopers International*, 2007 U.S. Dist. LEXIS 21955, *31 (S.D. Fla. 2007) (granting defendant's motion to dismiss a breach of fiduciary duty claim where plaintiffs failed to allege that the defendant voluntarily assumed a duty to advise, counsel, and protect the plaintiffs).

Moreover, Plaintiff's bare allegation that SC&B is an expert in dealing with rare coins is insufficient to state a cause of action for breach of a fiduciary duty. For example, in *Llewellyn v. North American Trading*, 1997 U.S. Dist. LEXIS 22142, *14 (S.D.N.Y. 1997), a case nearly indistinguishable from this action, the court held that "[t]he mere fact that defendants may be expert marketers of rare coins and that plaintiff trusted them, does not, by itself, give rise to a fiduciary relationship." Similarly, in *Williams-Garrett v. Murphy*, 106 F. Supp. 2d 834, 840-41 (D.S.C. 2000), the plaintiff alleged that she was a novice in the coin trade and reposed a significant amount of trust in the defendant with respect to coin dealings. Despite these allegations, the court noted that "[a]s a general rule, mere respect for another's judgment or trust in his character is usually not sufficient

to establish [a fiduciary] relationship." *See also Hutton v. Klabal*, 726 F. Supp. 67 (S.D.N.Y. 1989) (dismissing a constructive fraud claim based on plaintiff's failure to establish a fiduciary relationship and holding that "[a]n expert does not, however, solely by virtue of his expertise, have a fiduciary responsibility to his customers"); *Mechigian v. Art Capital Corp.*, 612 F. Supp. 1421, 1431 (S.D.N.Y. 1985) (finding that allegations relating to the expertise and superior knowledge of an art dealer were "insufficient to support a claim that a fiduciary relationship existed between the parties").

### IV. Plaintiff's Negligence and Breach of Fiduciary Duty Claims Are Barred By The Economic Loss Rule.

Plaintiff's tort claims for negligence and breach of fiduciary duty must also be dismissed under Florida's Economic Loss Rule, which bars tort claims seeking to recover solely economic damages. Florida federal and state courts have routinely dismissed tort claims that are not independent of a breach of contract claim and which are instead "inextricably intertwined" with claims and allegations arising under the contract. *See, e.g., Targia v. U.S. Alliance Mgmt. Corp.*, No. 02-23055-CIV, 2003 WL 23312749, at *2 (S.D. Fla. Nov. 14, 2003) (dismissing breach of fiduciary duty claim in part because the allegations did not fall within the "exception to the economic loss rule . . . carved out for tort actions which are independent of the contractual breach"); *Excess Risk Underwriters v. Lafayette Life Ins. Co.*, 208 F. Supp. 2d 1310, 1317-18 (S.D. Fla. 2002) (dismissing breach of fiduciary duty claim that was "based on actions inextricably intertwined with the acts constituting the breach of contract"); *Medalie v. FSC Sec. Corp.,* 87 F. Supp. 2d 1295, 1300 (S.D. Fla. 2000) (dismissing breach of tort claims against a stock broker because they were based on a breach of contract).

As the court held in *Medalie*, in order to avoid application of the economic loss doctrine and recover in tort, "there must be a showing of harm above and beyond disappointed [contractual]

expectations . . . [c]onsequently, when the alleged duty breached is derived from the contractual relationship it cannot form the basis for a separate and distinct tort." 87 F. Supp. 2d at 1300 (emphasis added).  Here, however, each of the separate transactions involving the purchase and sale of the coins placed at issue in the Complaint were conducted pursuant to written and/or verbal contracts between the Plaintiff and SC&B.  Plaintiff is therefore barred from seeking to recover his alleged economic damages in tort, and his negligence and breach of fiduciary duty claims should accordingly be dismissed.

## CONCLUSION

For all of the foregoing reasons, the Court should grant SC&B's Motion to Dismiss, with prejudice, and grant SC&B such further and additional relief as the Court deems necessary and proper.

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Memorandum of Law in Support of Motion to Dismiss was electronically filed with the Clerk of the Court and upon all counsel of record on the attached Service List using the CM/ECF system this 6th day of October, 2008.

s/ Jonathan B. Butler
Jonathan B. Butler, Esq.
Florida Bar No. 0056197
E-mail: jbutler@fowler-white.com

FOWLER WHITE BURNETT P.A.
901 Phillips Point West
777 South Flagler Drive
West Palm Beach, Florida 33401
Telephone:  (561) 802-9044
Facsimile:  (561) 802-9976
Attorneys for Stanford Coins & Bullion, Inc.

<u>SERVICE LIST</u>
Robert Shave v. Stanford Coins & Bullion, Inc.
United States District Court for the Southern District of Florida
Fort Lauderdale Division
CASE NO. 08-61503-CIV-COHN/SELTZER

Ronald Shindler
Florida Bar No. 781703
E-mail: rshindler@fowler-white.com
FOWLER WHITE BURNETT P.A.
Espirito Santo Plaza, 14th Floor
1395 Brickell Avenue
Miami, Florida 33131-3302
Telephone: (305) 789-9200
Facsimile: (305) 789-9201
Attorneys for Stanford Coins & Bullion, Inc.

Jonathan B. Butler
Florida Bar No. 0056197
E-mail: jbutler@fowler-white.com
FOWLER WHITE BURNETT P.A.
901 Phillips Point West
777 South Flagler Drive
West Palm Beach, Florida 33401
Telephone: (561) 802-9044
Facsimile: (561) 802-9976
Attorneys for Stanford Coins & Bullion, Inc.

Scott L. Silver, Esquire
Blum & Silver, LLP
E-mail: hitchcock@stockattorneys.com
12540 W. Atlantic Blvd.
Coral Springs, Florida  33071
Telephone: (954) 255-8181
Facsimile: (954) 255-8175
Attorneys for Robert Shave

Jeffrey L. Cox, Esquire
Sallah & Cox, LLC
E-mail: jcox@sallahcox.com
Boca Corporate Center, Suite 218
2101 N.W. Corporate Boulevard, Boca Raton, FL 33431
Attorneys for Robert Shave